**In re WINDMILL FARMS MANAGE-
MENT COMPANY and Related
Entities, Debtor.**

**Bankruptcy No. 84–5115–LM7x.**

United States Bankruptcy Court,
S.D. California.

July 18, 1990.

**756**

David L. Buchbinder, Buchbinder & Associates, San Diego, Cal., Trustee.

James E. Lund, Law Offices of James E. Lund, Escondido, Cal., for debtor.

William M. Rathbone, Weeks, Willis, Rathbone and Johnson, San Diego, Cal., for Trustee.

Jonathan S. Dabbieri, Hillyer and Irwin, San Diego, Cal., for Vanderpark Properties.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN,
Bankruptcy Judge.

Vanderpark Properties, Inc. ("Vanderpark") is again before the court pursuant to a decision by the Ninth Circuit Court of Appeals reversing this court's decision that the trustee of Windmill Farms, Inc., ("WFI") could assume a lease of Vanderpark's commercial property. *See, In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir.1988). In its reversal and remand, the Ninth Circuit directed this court to determine whether Vanderpark's lease had been validly terminated pre-petition and, if so, whether any state anti-forfeiture provision would have relieved the trustee from the termination. Vanderpark filed a motion for jury trial on these issues, along with a request that the bankruptcy court recommend the district court withdraw its reference to conduct this hearing.

1. It appears that the amendment to add the additional defendants occurred after an involuntary petition had been filed against WFMC,

## FACTS·

Although the Ninth Circuit opinion remanding this matter contains an accurate description of the events in this case, a brief review is appropriate. In July 1975, Vanderpark leased commercial real property to Mini Super, Inc., for a ten-year period. Vanderpark consented to two assignments of the lease. The first was to Windmill Farms, a general partnership; the second assignment was from the partnership to WFI.

WFI was a wholly-owned subsidiary of Windmill Farms Management Company ("WFMC"). WFI was also the general partner of Windmill Farms Ltd. No. 1 ("WFL# 1"), a California limited partnership. WFMC was the general partner in a number of other limited partnerships containing the Windmill Farms name and performed centralized accounting functions for all of the Windmill Farms entities. The Windmill Farms entities were purchased in 1983 by Michael E. Crowley. Thereafter, all rent payments to Vanderpark were made by WFMC.

In February 1985, WFMC failed to remit WFI's February rent. On February 15, 1985, Vanderpark addressed and served a three-days' notice to pay rent or quit on "Windmill Farms." The notice stated that Vanderpark would elect to declare the lease forfeited if back rent and delinquent tax impounds were not paid within the three-days' notice period. They were not paid within the time provided and in March 1985, Vanderpark filed an unlawful detainer action in state court against "Windmill Farms, a partnership." It later amended its complaint to include WFI, WFMC and WFL# 1 as additional defendants.[1]

On February 27, 1985, an involuntary bankruptcy petition was filed against WFMC. David L. Buchbinder ("Trustee") was appointed Chapter 7 trustee for WFMC. In May 1985, the Trustee learned of the unlawful detainer action filed by

but before WFL # 1 and WFI became debtors in bankruptcy.

Vanderpark. After reviewing the corporate files and believing that WFL# 1 owned the lease, the Trustee filed a Chapter 7 petition for the limited partnership. The WFMC and WFL# 1 cases were consolidated, and the Trustee moved to assume the lease.

Vanderpark opposed the lease assumption. After an evidentiary hearing held on September 27, 1985, the court determined that the lease belonged to WFI and not to the debtor WFL# 1 and, since WFI was not in bankruptcy, the trustee could not assume the lease. Three days later, on the following Monday, the trustee filed a Chapter 7 petition for WFI and on an emergency basis moved to consolidate WFI with the other Windmill bankruptcy proceedings as well as assume the Vanderpark lease and exercise the lessee's option to renew. The bankruptcy court granted the Trustee's motions and has been affirmed by the Ninth Circuit Court of Appeals as not abusing its discretion in doing so. *In re Windmill Farms, Inc.*, at 1472.

Thereafter, the Trustee sought permission to assign and sell the lease free and clear of the interests and liens of Vanderpark. Vanderpark brought a cross-motion for a stay pending appeal pursuant to Bankruptcy Rule 8005, and for continuance. Vanderpark's motions were denied at a hearing held October 22, 1985, and the sale went forward on that date, with sale confirmed to Steven R. Boney for $108,000, with a backup bid for $106,000 from Lee R. Dugan and Yeh–Hua Tsai Lai ("D/L"). The only condition to the sale was that the proposed assignee give Vanderpark adequate assurance of future performance. After consultation with counsel for Vanderpark and the Trustee at the hearing, the court announced a mechanism for approval of the financial qualifications of the successful bidder in the event Vanderpark did not believe them adequate. (Rep.Transcript, Oct. 21, 1985, pp. 5–7).

Boney did not complete the sale and, instead, an order was entered February 24, 1986, approving the sale to D/L for $106,-000. The order recited in relevant part:

The approval of the assignments was conditioned upon Lessor Vanderpark Properties, Inc.'s approval as to the financial condition of the proposed assignees.... Mr. Dugan and Ms. Lai were approved by Vanderpark Properties, Inc., as being financially solvent enough to become assignees of the lease and the purchase price for the lease was ultimately $106,000.

The order was submitted by the Trustee and approved as to form by Vanderpark's counsel. No other conditions were set forth in the order. Vanderpark never appealed this order and it has become final.

In the course of considering exhaustive briefs presented by the parties on the question of entitlement to jury trial, it occurred to the court that it was possible this matter was moot. As stated in my letter to the parties:

[A]s I considered the jury trial question and what remains to be determined by a jury, it occurred to me that neither a judge nor a jury determination would have an effect on the present situation. Vanderpark cannot oust the third party from possession because of the failure to obtain a stay; Vanderpark has been made whole by the payment of rent by the trustee; and, it does not appear that any relief that this court could grant pursuant to the Ninth Circuit's remand order entitles Vanderpark to the $106,-000 on deposit with the Trustee.

The parties were given an opportunity to respond, and in the course of that response, the court learned for the first time that on January 31, 1986, Vanderpark, the Trustee, and D/L (successful back-up bidders at the sale), entered into an agreement called "Assignment of Lease" ("Assignment"). The Assignment provided that Vanderpark was consenting to the assignment to D/L (subject to some limitations which will be discussed), that the Trustee remained liable for performance of the lease obligations and that any legal action brought in connection with the Assignment or lease would entitle the prevailing party to recover attorneys' fees and costs of suit. This Assignment agreement was entered into without court knowledge or approval.

## ISSUES

I. Does failure to obtain a stay pending appeal of the order for assignment and sale of the lease moot Vanderpark's appeal of the assumption order?

II. Assuming it does not, is there any controversy affecting the Trustee or the estate which remains for the bankruptcy court to decide?

III. Assuming this matter is not moot, is Vanderpark entitled to a jury determination of whether the lease terminated prepetition?

## DISCUSSION

### I

■ In the course of supplemental briefing on the issue of mootness, Vanderpark revealed for the first time that it is not claiming the $106,000 paid by D/L for the Trustee's right, title and interest in Vanderpark's lease—a fact never previously admitted by Vanderpark at any appellate level. Vanderpark claims that it is only trying to obtain a court declaration of what the Trustee sold:

> What remains to be determined is exactly what the Trustee sold. Vanderpark contends that the lease had terminated and the Trustee had no interest to convey. (Supplemental Memo of Points and Authorities, filed June 1, 1990 ("Supp. Memo."), p. 5:2–6.)

Presumably, Vanderpark's argument is that since it is not claiming the $106,000 sales price, an appeal of the order permitting the Trustee's assumption of the lease did not require it to appeal the order assigning and selling the lease and, therefore, failure to obtain a § 363(m) stay does not render its appeal moot.[2] The fallacy of this argument is that it presumes the purchaser agreed to buy "... a terminated lease subject only to a right to relief from forfeiture." (Supp. Memo., p. 5:17–18). There is no evidence in the record that that

was the case. The Trustee's sale was neither noticed nor conducted subject to Vanderpark's pending appeal of the assumption order.

Vanderpark claims that § 363(m) is "irrelevant" because it does not seek to challenge the validity of the sale or seek modification or reversal of it. (Supp. Memo., p. 7:5–9). This argument is sheer double-talk. Ordinarily, a stay would have been required of the assignment order as well because, as pointed out by the court in her letter, no effective relief could have been given Vanderpark in the absence of one. *See, Onouli–Kona Land Co.,* 846 F.2d 1170, 1171–73 (9th Cir.1988); *Mann v. ADI Investments, Inc.,* 907 F.2d 923, 925–26 (9th Cir.1990).

Vanderpark's argument that it falls within the exception to the stay rule established by the *Cada Investments, Inc.,* 664 F.2d 1158 (9th Cir.1981) and *In re Victoria Station, Inc.,* 88 B.R. 231 (9th Cir. BAP 1988) cases, is also erroneous. In *Cada,* the court-ordered sale of the assets was made subject to the pending appeal. *Cada,* at 1160. Similarly, in *Victoria Station,* it appears that the assignment of lease approved by the court was expressly conditioned on the outcome of the appeal and contained provisions which protected the assignee in the event of reversal. *Victoria Station,* at 234–35.

In this case, upon conclusion of the October 21, 1985 bidding process, the only approval required from Vanderpark related to the financial condition of the proposed assignee. The order entered February 24, 1986, does not reflect any other. Therefore, it was a sale free and clear without conditions, and a stay pending appeal would have been required even though the assignees knew of the pendency of Vanderpark's appeal of the assumption order.

. The only element of uncertainty injected in this court's conviction that a stay pend-

---

2. Section 363(m) provides:

  The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, *whether or not such entity knew of the pendency of the appeal,* unless such authorization and such sale or lease were stayed pending appeal. (emphasis added)

ing appeal of the sale order was required is that created by the Assignment agreement. Paragraph 4(a) of the Assignment states:

A. If the orders of the bankruptcy court approving the Trustee's assumption and assignment of this lease are reversed on appeal, this consent shall be void and of no effect and Lessor shall immediately seek possession of the subject premises.

As previously discussed, Vanderpark's consent to assignment was unnecessary, except insofar as Vanderpark was required to approve the financial condition of the successful bidder or be subject to another hearing on why it did not do so. On the other hand, it could be argued that this Assignment agreement was, in effect, a stipulation among the parties to avoid the requirements of Bankruptcy Rule 8005—a stipulation not approved by this or any other court. Absent Vanderpark obtaining a Bankruptcy Rule 8005 stay, this court firmly believes its appeal would be moot at this juncture. Whether the parties can, by agreement, circumvent Bankruptcy Rule 8005 without court approval, keep a controversy alive and impose appellate jurisdiction where it otherwise would not lie, has not been tested, to this court's knowledge.

At minimum, it is clear that this entire matter went up the federal appellate ladder and back down again to this court on the assumption that Vanderpark was claiming the $106,000 held by the Trustee. Now Vanderpark states that it has had no interest in the $106,000, that it never did, and the Ninth Circuit Court of Appeals was in error when it thought so. Additionally, Vanderpark argues that the dispute it has with D/L, the assignees, cannot affect the estate and, therefore, this court has no further jurisdiction to determine those matters remanded to her by the Ninth Circuit.

## II

■ Assuming for purposes of argument that Vanderpark's appeal is not moot, the court must address the next question raised by Vanderpark: Is there anything affecting the Trustee or the estate which remains for the bankruptcy court to decide? Once again, Vanderpark's argument that there is not is erroneous.

Paragraph 5 of the Assignment provides: Assignor [the trustee] shall remain liable for the performance of the provisions of the lease to the extent of the original lease obligations and it shall in no way be released from its obligations under the lease regardless of any modifications, indulgences or agreements made between Lessor and Assignee.

Paragraph 7 of the Assignment provides: If any party hereafter commences an action against any of the parties arising out of or in connection with this Assignment of Lease, or any breach of said Lease or to recover possession of subject premises as referenced in Paragraph "4.a." above, the prevailing party or parties shall be entitled to recover from the losing party or parties reasonable attorney's fees and costs of suit.

Therefore, for reasons known only to the Trustee, this Assignment retains the Trustee as a party liable under the lease and responsible for performance of its obligations, although the court order does not so provide. The effect of this Assignment provision on the Trustee's liability during D/L's occupancy of the premises is untested. If Vanderpark sued D/L for possession, the Trustee is a necessary party to that suit. It also appears that the Assignment could make the Trustee jointly and severally liable with D/L for attorney's fees, as well as all other damages arising out of any litigation over the lease, including an action to oust D/L from possession.

In addition to the potential estate liability created by the Assignment, Vanderpark's waiver of any claim to the $106,000 in the Trustee's possession does not relieve the Trustee of a claim by D/L for recovery of the purchase price in the event the lease is determined to have been terminated pre-petition. Vanderpark argues that the "reduced" purchase price paid for the lease somehow reflects D/L's knowledge that it was purchasing nothing from the Trustee.[3]

3. In the course of the supplemental memoranda

on the question of mootness, it was also re-

There is no evidentiary support for that position in the record. First, no appraisal was considered by the court in conjunction with the auction. Second, there is no evidence that D/L had knowledge of the appraisal. It is possible that the low sale price could be a reflection of any number of factors, including the distress nature of the bankruptcy sale.

Therefore, in this court's view, if what the Trustee sold to D/L was worthless, there is nothing which precludes D/L from suing the estate to recover the $106,000 sale price. Based on the foregoing, the court concludes that, assuming that failure to obtain a stay of the assignment and sale order did not moot Vanderpark's appeal of the assumption order, determination of whether the lease terminated pre-petition affects the Trustee and the estate he is administering.

### III

The remaining question of whether Vanderpark is entitled to a jury trial determination of whether the lease terminated pre-petition is really a set of three questions:

A. Is this a core or non-core determination;

B. Has Vanderpark consented to core determination by this court; and,

C. Is Vanderpark entitled to a jury trial on this issue?

A. *Core vs. Non-Core:*

■ Vanderpark asserts that the issues presently before the court are non-core because they are based entirely on state law. But for the intervention of the bankruptcy, Vanderpark argues, the unlawful detainer issues would have been decided by a state court. In support of its argument, Vanderpark cites to, *inter alia, In re Castlerock Properties,* 781 F.2d 159 (9th Cir.1986) and *In re World Financial Services Center, Inc.,* 64 B.R. 980 (Bankr.S.D.Cal.1986) authored by my colleague Judge Hargrove.

Both cases are cited for the proposition that the Ninth Circuit has adopted a narrow definition of "core" proceedings. The Ninth Circuit in *Castlerock* stated:

[T]his circuit has interpreted *Marathon* [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Marathon*")] as depriving the bankruptcy court of jurisdiction "to make final determinations in matters that could have been brought in a district court or a state court." *In re Castlerock Properties,* 781 F.2d at 162 (*quoting Lucas v. Thomas,* 765 F.2d 926, 928 n. 2 (9th Cir. 1985)).

Accordingly, Vanderpark asserts that the issues before the court are non-core because the unlawful detainer action could have been brought in state court.

In opposition, the trustee argues that the issues that remain to be determined on remand arose from the application of Bankruptcy Code § 365. The trustee submits that a motion to assume or reject a lease brought under § 365 is a core matter under Title 28 U.S.C. § 157(b)(2)(A)(M)(N) and (O).[4]

The arguments presented by each of the parties are, for the most part, both correct. Presently, the Ninth Circuit and the Southern District of California adhere to a narrow and restrictive reading of 28 U.S.C. § 157(b).[5] *See, e.g., In re Castlerock Prop-*

---

vealed for the first time that the lease had been appraised as having a value of $214,000.

4. 28 U.S.C. § 157(b) provides in part that:
(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
. . . .
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims

brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

5. 28 U.S.C. Section 157(b) provides that:
Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a)

erties, *supra; In re World Financial Services Center, supra; In re World Solar Corp.*, 81 B.R. 603 (Bankr.S.D.Cal.1988). Similarly, motions to assume or reject a lease are properly characterized as core proceedings. *See, e.g., Harley Hotels, Inc. v. Rain's International, Ltd.*, 57 B.R. 773 (Bankr.E.D.Pa.1985); *In re Nexus Communication, Inc.*, 55 B.R. 596 (Bankr.E.D. N.C.1985).

For reasons discussed more fully in Section III.C.3 of this Opinion [6], while the court believes this to be a core matter, the question of whether the issues involved are core need not be resolved. Section 157(b)(1) of Title 28 gives bankruptcy judges the jurisdiction to hear and enter final orders and judgments in all "core proceedings arising under Title 11," subject to appellate review. Section 157(c)(2) provides bankruptcy judges with the same powers in non-core proceedings where the parties to the proceeding consent. As discussed in the succeeding section, the question of core jurisdiction has been mooted by Vanderpark's consent to this court entering a final order or judgment in the present dispute with the Trustee.

### B. *Consent:*

For those matters which are not "core proceedings" but are "related" proceedings, § 157(c)(1) of Title 28 provides a separate basis for the bankruptcy court's jurisdiction. In non-core related matters:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. 28 U.S.C. § 157(c)(1).

■ Thus, the bankruptcy court's findings of fact and conclusions of law in non-core related matters are reviewed by the district court *de novo* unless the parties consent to the bankruptcy court entering a final order. Consent to the bankruptcy court's entering final orders in non-core related proceedings is governed by 28 U.S.C. § 157(c)(2). Under § 157(c)(2):

[T]he district court, with the consent of the parties to the proceeding, may refer a proceeding related to a case under Title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title. 28 U.S.C. § 157(c)(2).

Under § 158, the district court has appellate jurisdiction over final judgments and orders of the bankruptcy court.

■ In the present dispute, since Vanderpark has not given its express written consent to the bankruptcy court's final adjudication of this matter, this court must determine whether any acts by Vanderpark, short of express written consent, can constitute consent. Several courts have addressed this issue.

In *Daniels–Head & Assoc. v. William M. Mercer, Inc. (In re Daniels–Head & Associates )*, 819 F.2d 914 (9th Cir.1987) ("*Daniels–Head* "), the Court of Appeals for the Ninth Circuit concluded that the failure to object to the bankruptcy court's jurisdiction constitutes consent to that jurisdiction. There the question of consent arose when one of the parties attempted to object to the bankruptcy court's jurisdiction after fully litigating the matter before that court. The court found that the parties had impliedly consented to the bankruptcy court's jurisdiction by failing to timely object to the jurisdiction of the bankruptcy court. *See also, Mann v. ADI Investments, Inc.*, at 926.

In *Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.)*, 834 F.2d 1134 (2d Cir.1987), the Court of

---

of this section, and may enter appropriate order and judgments, subject to review under section 158 of this title.

**6.** p. 760 *et seq.*

Appeals for the Second Circuit concluded that the act which constituted consent was the parties' failure to timely object to the jurisdiction of the bankruptcy court. The Second Circuit noted that the failure to object to the:

> [A]ssumption of "core jurisdiction" at any point in these extensive proceedings before the bankruptcy court and the further failure to object to any part of the appeal process in the district court constitutes consent to the final adjudication of this controversy before the bankruptcy court. *Id.* at 1138.

Thus, authority exists for the proposition that absent even express consent, parties can consent through conduct to the bankruptcy court's jurisdiction by failing to timely object to that jurisdiction. The court finds that Vanderpark has consented to the final adjudication of the present controversy due to its failure to raise timely a jurisdictional objection before this court, and to preserve its jurisdictional objections during the appellate process before the Bankruptcy Appellate Panel ("BAP") and Court of Appeals.

The court notes that Vanderpark had several opportunities to raise jurisdictional objections. Its first opportunity was at the evidentiary hearing on September 27, 1985, at which time it was determined that the lease had not been validly assigned to WFL, Ltd. # 1. It was counsel for Vanderpark who submitted the order pursuant to this hearing which was signed, entered on November 1, 1985, and became a final order. Its second opportunity to object was at hearing on October 21, 1985, when the trustee's motion to assign the lease was approved and its cross-motion for stay pending appeal denied. Its third opportunity was in its motion for relief from stay filed January 10, 1986, asking relief from the stay because of the trustee's alleged non-performance of the terms of the order to sell the lease. Also, it does not appear Vanderpark raised jurisdictional objections at any appellate level. Yet at no time, until the hearing on remand, did Vanderpark raise or question the ability of this court to enter final orders or judgments in this matter. Vanderpark's objection at this stage "more closely resembles an afterthought than a bona fide objection." *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d Cir.1987).

The court acknowledges that the Ninth Circuit Court of Appeals in *Pacemaker Diagnostic Clinic v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.1984) *en banc, cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984) ("Pacemaker"), has previously held that consent by a party must be shown to be knowing and voluntary. *Pacemaker,* is distinguishable from the present dispute. In *Pacemaker,* the court was faced with § 636(c)(1) of the United States Magistrates Act. Although § 636 served as Congress' model for § 157(c)(2), its requirement that parties expressly consent to a magistrate making a final adjudication in a civil matter was not adopted into the BAFJA amendments.

Section 157(c)(2) does not require express consent. "The fact that Congress failed to include any provision for explicit consent in the 1984 Act indicates that consent implied from the parties' actions is sufficient." *Daniels–Head & Assoc. v. William H. Mercer, Inc.,* 819 F.2d at 918–19. *See also, Mann v. ADI,* at 925–26. *See Duvoisin v. Foster (In re Southern Industrial Banking Corp.),* 809 F.2d 329, 331 ("the absence of a timely objection to the bankruptcy court's jurisdiction constitutes implied consent to the resolution of the controversy"); *Lombard–Wall, Inc. v. New York City Housing Development Corp. (In re Lombard–Wall, Inc.),* 48 B.R. 986, 992 (Bankr. S.D.N.Y.1985) ("We see no evidence in section 157(c)(2) to suggest altering the traditional rule that consent can be both express and implied."); *Baldwin–United Corp. v. Thompson (In re Baldwin–United Corp.),* 48 B.R. 49, 54 (Bankr.S.D.Ohio 1985) (consent may be implied from failure to object or from any act indicating a willingness to have the bankruptcy court determine a claim).

The court is cognizant that she "should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy

judge." *Men's Sportswear, Inc.*, 834 F.2d at 1138. However, Vanderpark's silence up to this point on the jurisdictional issue before this court, the BAP, and the Court of Appeals can only be construed as consent to the jurisdiction of this court to enter final orders and judgments on all matters relating to the resolution of this dispute with the trustee.

### C. *Jury Trial:*

■ Vanderpark requests a jury trial determination of whether the lease terminated pre-petition. The issues raised by Vanderpark go to the heart of an ongoing controversy that has existed since the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("Marathon"). This controversy has been recently revived by the Supreme Court's decision in *Granfinanciera S.A. v. Nordberg*, 492 U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ("*Granfinanciera*"). This section of the Memorandum Opinion is arranged in a format which the court believes is conducive to answering those questions raised by the parties and addressed by the majority opinion in *Granfinanciera*.

In *Granfinanciera*, the United States Supreme Court defined a right to a jury trial in a bankruptcy proceeding. It held that the Seventh Amendment guaranty of a jury trial extends to a non-debtor party against whom relief is sought by the estate in an action at law, even though that action is denominated "core" under 28 U.S.C. § 157(b)(2). The majority opinion applied a three-part analysis to determine whether the relief sought was entitled to jury determination.[7] The same analysis will be applied to the question raised by Vanderpark:

1. Was the action triable by a jury in 18th century England prior to the merger of the courts of law and equity? [8]

Vanderpark's unlawful detainer action was, in essence, an action for the recovery of possession of real property. At common law, actions brought for the recovery of real property were actions at law in which a trial by jury was granted. The United States Supreme Court in *Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), conceded that actions for unlawful detainer did not exist when the U.S. Constitution was drafted. However, similar causes of action existed at common law (i.e., ejectment) for the recovery of property which carried a right to trial by jury. *Id.* at 375–76, 94 S.Ct. at 1729–30.

In *Pernell*, the Supreme Court said:

Whether or not a close equivalent to [the forcible entry and unlawful detainer statute] existed in England in 1791 is irrelevant for Seventh Amendment purposes, for that Amendment requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity ... [citation omitted.]

The proceeding established by the [unlawful detainer statutes], while a far cry in detail from the common-law action of ejectment, serves the same essential function—to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself ... Moreover, it appears that every action recognized in 1791 for the recovery of

---

7. *Granfinanciera*, 492 U.S. at ——, 109 S.Ct. at 2790, 106 L.Ed.2d at 41.

8. The continued utility of this test has already been called into question by its very proponent in *Granfinanciera*, Mr. Justice Brennan, who in *Chauffeurs, Teamsters And Helpers, Local No. 391 v. Terry, et al.*, —— U.S. ——, 110 S.Ct. 1339, 1349–50, 108 L.Ed.2d 519, at 534 (1990) stated: The current test, first expounded in *Curtis v. Loether*, [citation omitted] requires a court to

compare the right at issue to 18th-century English forms of action to determine whether the historically analogous right was vindicated in an action at law or in equity, and to examine whether the remedy sought is legal or equitable in nature. However, this Court, in expounding the test, has repeatedly discounted the significance of the analogous form of action for deciding where the Seventh Amendment applies. I think it is time we dispense with it altogether....

possession of property carried with it the right to jury trial ... Since the right to recover possession of real property governed by [the unlawful detainer statute] was a right ascertained and protected by courts at common law, the Seventh Amendment preserves to either party the right to trial by jury. *Id.* at 375–76, 94 S.Ct. at 1730.

Accordingly, the court finds that an action for the recovery of possession of real property would be triable by a jury. Vanderpark has satisfied the first part of the *Granfinanciera* enquiry.

### 2. Is the remedy sought legal or equitable?

In this part of the analysis the court must examine whether the relief sought is legal or equitable in nature. Referring again to the *Pernell* decision, the Supreme Court stated:

> [I]t would be difficult, and perhaps impossible, to state any general rule which would determine, in all cases, what should be deemed a suit in equity as distinguished from an action at law ...; but this may be said, that, where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. *Id.* at 370 [94 S.Ct. at 1727] (quoting *Whitehead v. Shattuck*, 138 U.S. 146, 151 [11 S.Ct. 276, 277, 34 L.Ed. 873] (1891)).

Accordingly, because Vanderpark's unlawful detainer action was essentially one for the recovery of possession of real property, the action would be legal in nature and the second requirement enunciated in *Granfinanciera* has been met.

### 3. Has Congress permissibly assigned the resolution of legal actions for recovery of possession of real property in a bankruptcy case to a non-Article III adjudicative body?

The third part of the *Granfinanciera* analysis requires the court to determine

whether the cause of action involves "public" as opposed to "private" rights. The Supreme Court has rejected the view that a public right requires, at a minimum, a dispute between the government and others. *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 69, 102 S.Ct. 2858, 2870, 73 L.Ed.2d 598 (1982); *Thomas v. Union Carbide,* 473 U.S. 568, 586, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409 (1985); *Id.* at 596–99, 105 S.Ct. at 3341–43 (*"Thomas"*); *Granfinanciera,* 492 U.S. at ——, 109 S.Ct. at 2796–97, 106 L.Ed.2d at 48–49. Even where the federal government is not a party to a dispute, the Congress "acting for a valid legislative purpose pursuant to its constitutional powers under Article I," may create a statutory right closely-integrated into a public regulatory scheme within Congress' power to enact and supplant a common law action ordinarily having a jury trial right. *Thomas,* 473 U.S. at 593–94, 105 S.Ct. at 3339–40; *Atlas Roofing v. Occupational Safety And Health Review Comm.,* 430 U.S. 442, 458, 97 S.Ct. 1261, 1270, 51 L.Ed.2d 464 (1977) (*"Atlas"*). In *Marathon,* the plurality noted that the restructuring of the debtor-creditor relationship in bankruptcy proceedings "may well be a 'public right.'" (458 U.S. at 71, 102 S.Ct. at 2871.)

An examination of the history and provisions of § 365 of the Bankruptcy Code compels this court to conclude that Congress has created just that closely-integrated regulatory scheme for resolving lease disputes referred to in *Atlas* and *Thomas* and, in so doing, preempted the right to jury determination of whether a lease terminated pre-petition.

Although patterned on its predecessor, § 70b of the Bankruptcy Act of 1898 ("Act")[9], the major substantive change in § 365 of the Code was the invalidation of lease *ipso facto* clauses which previously had prevented a trustee's assumption or assignment of a lease in the event of a bankruptcy. This change permitted a trustee to assume and assign a lease, often

---

**9.** Chapt. 541, 30 Stat. 544 (1898), as amended by the Chandler Act, Chapt. 575, 52 Stat. 840 (1938).

at a profit to the estate. Under the Bankruptcy Reform Act of 1978 (the "Code"),[10] although the trustee was required to act to assume the lease within 60 days in a Chapter 7 case, § 365(b)(2) permitted a trustee in a Chapter 9, 11 or 13 case to assume or reject the lease at any time during the period before confirmation of a plan. In addition to the uncertainty whether a trustee or debtor-in-possession would assume or reject an unexpired lease, landlords also perceived that § 365(b)(4) did not require a trustee to make current rental payments.

When the *Marathon* decision required Congress to revisit the entire jurisdictional scheme of bankruptcy courts, it is uncontroverted that Congress also became subject to massive efforts by interests unhappy with their treatment under the 1978 Code. Among those lobbying for changes were commercial landlords whose lobbying efforts were aimed at three asserted problem areas: (1) The long-term vacancy or partial occupancy of a space by a bankrupt tenant; (2) the lack of current payment for space and services; and, (3) the disruption of tenant mix by assignments violating lease "use" provisions. *Note, Section 365 of the Bankruptcy Code: Out of Balance After 1984?*, 4 Utah L.Rev. 781–796 (1986); *See also*, A.M. Sabino and M.J. Sabino, *Restoring The Necessity Of Timely Court Approval For the Assumption Or Rejection Of Unexpired Leases Under the Bankruptcy Code Section 365(d)(4)*, 27 Duq.L.Rev. 35, 37–42 (1988). When, in 1984, Congress enacted the Bankruptcy Amendments And Federal Judgeship Act of 1984 ("BAFJA"),[11] substantial revisions to § 365 were made to achieve those ends.

The BAFJA amendments to § 365 compel a trustee in a Chapter 9, 11 and 13 case to assume or reject an unexpired lease of

non-residential real property within 60 days after entry of the order for relief or obtain an extension of time to do so within those first 60 days [§ 365(d)(4)]. Failure to assume or reject within that period results in automatic termination. Further, the trustee must timely perform all of the tenant's obligations under the lease, including the obligation to pay rent and other charges, until the decision to assume or reject is made [§ 365(d)(3)]. Additionally, the standard was tightened for determining whether a proposed assignee provides adequate assurance of future performance by requiring assurance of financial and operating performance [§ 365(b)(3)(A)].

In summary, § 365, as amended, requires the trustee or a debtor-in-possession to act on the decision to assume or reject an unexpired lease within 60 days of a petition's filing, to pay rent and other charges while making that decision, and to meet more stringent standards in assigning the lease. While § 365(c)(3) limits assumption and assignment to those leases not terminated pre-petition, within the above-described accelerated and comprehensive regulatory mechanism for lease assumption, there does not appear to be the "leisure" to conduct a jury trial by any tribunal competent to conduct one[12] on the question of whether termination occurred pre-petition. Given the delay that a jury trial would inject into the entire § 365 procedure for lease assumptions, it is clearly incompatible with Congress' intent to have these matters determined quickly to relieve the perceived hardship caused to landlords by a tenant's bankruptcy.

Although the Ninth Circuit Court of Appeals did not directly consider the question of which court would determine whether

---

10.  P.L. No. 95–598, 92 Stat. 2549 (1978) codified at 11 U.S.C. §§ 101–1330.

11.  P.L. No. 98–353, 98 Stat. 352 (1984).

12.  This Court is not holding that bankruptcy courts do not have jury trial powers. The controlling precedent in this district is that they do have jury trial powers in core matters. *In re Cinematronics, Inc.*, 111 B.R. 902 (S.D.Cal.1990). This controversy is subject to a split in authority

between the circuits and will be considered by the United States Supreme Court during its next term. *See, In re Ben Cooper, Inc. v. Ins. Co. of the State of Pennsylvania*, 896 F.2d 1394 (2d Cir.1990), *cert. granted*, —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779; *In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449 (8th Cir.1990), *reh'g* and *reh'g en banc denied* June 18, 1990, (1990 WL 48555, 1990 U.S. App. LEXIS 10056).

this lease was terminated pre-petition,[13] it appears that they expected the bankruptcy court to make that determination. In remanding this matter, they stated:

> Assumability of a lease by a trustee in bankruptcy, in the context of a lease termination claim, involves a two-part test. The first part of the test is to determine whether the lease was terminated before the petition in bankruptcy was filed. *City of Valdez v. Waterkist Corp.*, 775 F.2d 1089, 1091 (9th Cir.1985) ... The second part of the test requires the court to "determine *whether the termination could have been reversed under a state anti-forfeiture provision or other applicable state laws.*" *Id.* (emphasis added in original) This second step in the analysis "permits the [trustee] the same opportunities to avoid forfeiture of a lease ... that it would have received under state law absent the bankruptcy proceedings." *Id.* (citing *Butner v. United States*, 440 U.S. 48, 55 [99 S.Ct. 914, 918, 59 L.Ed.2d 136] (1979)) *On remand, the bankruptcy court should determine* whether the lease, if validly terminated by Vanderpark, could have been saved from forfeiture by application of California Code of Civil Procedure § 1179, or any other anti-forfeiture provision of California law. (emphasis added) At 1472.

The Court of Appeals' expectation that the bankruptcy court would make the determination is firmly grounded in that historical precedent reaffirmed by the Supreme Court in *Granfinanciera*. In discussing the continued vitality of *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), in any post-Code analysis of the right to a jury trial in bankruptcy cases, the Supreme Court, in *Granfinanciera* said:

> Our holding [in *Katchen*] did not depend, however, on the fact that "[bankruptcy] courts are essentially courts of equity" because "they characteristically

proceed in summary fashion to deal with the assets of the bankrupt they are administering [citations omitted] ... Our decision turned, rather, on the bankruptcy court's having "actual or constructive possession" of the bankruptcy estate. 382 U.S. at 327 [86 S.Ct. at 471].

492 U.S. at ——, 109 S.Ct. at 2798, 106 L.Ed.2d at 50–51.

Under pre-Code law, the bankruptcy court had the power to constitutionally adjudicate summarily rights and claims to property in the actual and constructive possession of the debtor. *Thompson v. Magnolia*, 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1940). When, as here, questions as to the jurisdiction of the bankruptcy court to adjudicate lease controversies arose, in the Ninth Circuit they were resolved in favor of the bankruptcy court on the theory that the lease was in the constructive or actual possession of the debtor. *See, City of Huntington Beach v. The Huntington Ltd.*, 654 F.2d 578, 582 and 588–92 (9th Cir.1981); *Baker And Taylor Drilling v. Stafford*, 369 F.2d 551 (9th Cir.1966); *Pasadena Investment Co. v. Weaver*, 376 F.2d 175 (9th Cir.1967).

Although the Supreme Court acknowledged in *Granfinanciera* that the old summary/plenary distinction was abolished by the 1978 Code, the Court went on to observe that neither the 1978 Code nor its 1984 amendments created new causes of action and remedies therefor. 492 U.S. ——, 109 S.Ct. at 2800, 106 L.Ed.2d at 52. Indeed, as previously discussed, § 365 is patterned on § .70(b) of the repealed Act. Applying that reasoning to this dispute, since under the Act, the bankruptcy *court's* summary determination, without jury, of rights to a lease in the debtor's constructive or actual possession did not offend the Seventh Amendment, that same determination—now denominated "core"—made by a bankruptcy court in conjunction with a § 365 motion to assume a lease, does not

---

**13.** As mentioned above, in discussing whether Vanderpark has consented to the Bankruptcy Court entering final orders in this dispute, the jurisdictional "infirmities" to this Court making the final determination of whether the lease terminated pre-petition—including the claimed right to jury trial on the issue—are of recent vintage. The Ninth Circuit did not consider the question; it arose only after remand to the Bankruptcy Court.

violate the Seventh Amendment right to jury trial.

\* \* \*

In summary, this court concludes that the question of whether the lease terminated pre-petition and whether the Trustee is entitled to relief from forfeiture is a "core" determination because of Vanderpark's consent to the exercise of core jurisdiction by the bankruptcy court. Further, this court determines that Vanderpark is not entitled to a jury trial of the issue. Although the issue of unlawful detainer may have been triable by a jury in eighteenth century England and is a legal remedy, this court holds that Congress has permissibly assigned its resolution to the bankruptcy court. This conclusion is compelled on two grounds. First, the provisions of § 365 comprise a closely-integrated public regulatory scheme within Congress' power to assign to a non-Article III tribunal and, accordingly, supplant determination by jury trial. Second, historically, actions to determine rights to property within the actual or constructive possession of the debtor have been constitutionally subject to summary adjudication by the bankruptcy court. The Supreme Court's *Granfinanciera* opinion has affirmed the continued relevance of the question of constructive or actual possession of an asset to any analysis of jury trial rights in bankruptcy cases. Since this debtor was in actual as well as constructive occupation of the premises at the time its bankruptcy was filed, the court may determine the conflicting claims to possession without a jury.

The motion for jury trial is denied and this court declines to recommend withdrawal of the reference by the district court as requested by Vanderpark.

Counsel for the Trustee is directed to prepare an order in conformance with this Memorandum Decision within ten (10) days of its entry.