In re ORION PICTURES CORPORATION, et al., Debtors.

ORION PICTURES CORPORATION, et al., Plaintiff–Appellee,

v.

SHOWTIME NETWORKS, INC. f/k/a Showtime/The Movie Channel, Inc., Defendant–Appellant.

Nos. 91–B–15635 (BRL), 92 Civ. 5553 (JSM).

United States District Court, S.D. New York.

Dec. 14, 1992.

Francis J. Menton, Jr., Willkie Farr & Gallagher, New York City, for plaintiff-appellee.

R. Paul Wickes, Shearman & Sterling, New York City, for defendant-appellant.

OPINION

MARTIN, District Judge:

In 1986, Showtime and Orion entered into an exclusive output license (the "Agreement") under which Showtime agreed to license from Orion all motion pictures distributed by Orion on which photography

commenced between August 1, 1986 and July 31, 1991 and which conformed to certain specifications. Of particular significance for this matter is the specification that Orion comply with the "key man" clause of the Agreement, which required that at least two of four identified "key men" be continuously employed by Orion in positions at least substantially similar to those held at the time of the execution of the Agreement. Under the Agreement, the failure of Orion to comply with this provision throughout the entire term of the Agreement would cause Showtime's obligations to license the films to cease, at Showtime's election. For each film which qualified under the Agreement, Showtime was bound to pay Orion a significant fixed percentage of the production costs of the film.

On December 11, 1991, Orion filed for Chapter 11 reorganization. On March 20, 1992, Orion, by its trustee, filed two actions. The first, an adversary proceeding, claimed that Showtime had anticipatorily breached the Agreement and demanded either $77 million in damages or a decree ordering payment as set forth in the agreement. In addition, Orion sought declaratory judgments that Orion had not violated the "key man" clause and that Showtime was estopped from asserting that the "key man" clause had been violated. The second action, a motion to assume, sought the bankruptcy court's confirmation of Orion's business judgment that assumption of the Agreement would be beneficial to the estate. At issue in both proceedings was whether Orion, by effecting changes in its executive hierarchy relating to the "key men", had violated the "key man" clause of the Agreement.

On March 31, Showtime made a motion in the district court to withdraw the reference of the adversary proceeding from the bankruptcy court. Showtime alleged, *inter alia,* that the adversary proceeding was a non-core proceeding which implicated a jury trial right, and was not properly before the bankruptcy court. On April 13, Judge Keenan denied the motion, ruling

that the adversary proceeding was in fact a core proceeding. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 139 B.R. 785, 789 (S.D.N.Y.1992). The decision did not refer to Showtime's alleged jury trial right, beyond reciting Showtime's contention that it had such a right.

On April 2, while the motion was pending, Orion amended its adversary proceeding complaint. The amended complaint requested the following relief, eliminating the request for damages: (1) a declaratory judgment that Showtime was obliged to pay license fees to Orion of $77 million, the same amount that Orion had previously claimed as damages; (2) a declaratory judgment that Showtime was estopped from claiming that Orion had violated the "key man" clause; and (3) a decree in specific performance that Showtime pay Orion the license fees as set forth in the Agreement.

On April 23, Showtime answered the amended complaint and demanded a jury trial. On May 11, the bankruptcy court struck Showtime's jury demand, holding that the two actions were in effect only one issue, *i.e.* whether Orion had complied with the "key man" provision, and as such only the motion to assume was relevant, or alternatively that the underlying nature of the declaratory judgment motion was the motion to assume, which was an action in equity to which no right to jury trial attached. On May 15, after a brief trial, the bankruptcy court ruled in favor of Orion on the motion to assume the Agreement, finding that Orion had not violated the "key man" provision. Because the ruling afforded Orion complete relief by the assumption, according to the bankruptcy court's order of June 3, the adversary proceeding was dismissed as moot.[1]

Showtime now appeals both the bankruptcy court's adverse ruling on the motion to assume, and the supposed favorable dismissal of the adversary proceeding against it. Showtime claims, *inter alia:* (1) That the bankruptcy court denied it its Seventh Amendment right to a jury trial in determining the two actions, and requests that

---

**1.** At some point before the ruling, Orion      dropped its demand for specific performance.

the claims be reconsidered in a jury trial before the district court; (2) That a district court finding that the bankruptcy court had jurisdiction over the adversary proceeding because it was a "core" matter was reversible error; and (3) That the bankruptcy court incorrectly interpreted the contract.

### Jury Trial Right

█ The Supreme Court's recent decision in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), governs the determination of whether a jury trial is guaranteed under the Seventh Amendment. Two factors must be considered: (1) a comparison of the action to 18th century actions brought in courts of England prior to the merger of courts and equity; and (2) an examination of the nature of the remedy sought with regard to whether it sounds in law and equity. *See also In re Ben Cooper,* 896 F.2d 1394, 1401–02 (2d Cir.), *vacated and remanded sub nom., Insurance Co. of Penn. v. Ben Cooper, Inc.,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *judgment reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991) (analyzing nature of remedy to determine right to jury trial). The second factor has been said to be more important than the first. *Granfinanciera,* 492 U.S. at 41, 109 S.Ct. at 2790. Furthermore, if these factors indicate that a jury trial is normally required, the court must decide whether Congress may assign and has assigned the case to a non-Article III body that does not utilize a jury as factfinder.

In *Granfinanciera,* the issue was whether a jury trial right existed in a fraudulent conveyance action brought by a trustee under § 548 of the Bankruptcy Code. The Court found that both historical reference and the nature of the relief sought favored a Seventh Amendment right. With regard to the former, the Court noted that the common law actions of trover and assumpsit were brought before juries to recover

preferential payments. *Id.* 492 U.S. at 43–47, 109 S.Ct. at 2791–93. With regard to the latter, the Court found dispositive that the underlying dispute was about a sum of money only, for which an adequate remedy at law was available. *Id.* at 48–49, 109 S.Ct. at 2793–94. Thus, the relief was properly characterized as legal, and implied a jury trial right.[2]

The *Granfinanciera* test has been applied by at least one court to determine whether a right to jury trial exists in the context of a motion to assume. *In re Windmill Farms Mgmt. Co.,* 116 B.R. 755 (Bankr.S.D.Cal.1990). There, the court considered a motion to assume a lease which the non-debtor claimed to have been forfeited due to non-payment of rent. In fact, prior to the bankruptcy petition, the non-debtor had filed an unlawful detainer action in state court to recover the property. Finding that resolution of the motion to assume required a "determination of whether the lease terminated pre-petition," *id.* at 760, the court addressed whether the non-debtor was entitled to a jury trial on the issue. Applying the *Granfinanciera* analysis, the court found that since the underlying issue was an action for the possession of real property, it was most accurately characterized as legal, and implicated a jury trial right.

█ At first blush, the procedural posture of this case makes application of the *Granfinanciera* test somewhat difficult. However, the path can be cleared by reference to the rulings rendered by the bankruptcy court. The bankruptcy court ruled for Orion on the motion to assume, but dismissed the adversary proceeding without prejudice in its entirety. Chief Bankruptcy Judge Lifland specifically stated that he had not decided any issues unique to the adversary proceeding, and would proceed with it at a later time if so desired. Trial Hearing pp. 311–14. Thus, no error can have been committed with regard to Showtime's right to a jury trial in the ad-

---

2. It should be noted that the Court went on to analyze whether Congress had permissibly assigned such cases to a non-Article III arbiter, finding that such assignment, though made, was

impermissible. Because no Seventh Amendment right is here implicated under the two-prong test, it is unnecessary to discuss the question of permissible assignment.

versary proceeding, as no verdict has been rendered adverse to its interests. Only the motion to assume need be considered. Although Showtime made no express demand for a jury trial with respect to the motion to assume, such a demand will be implied due to the peculiar posture of the actions.

The ruling on the motion to assume did not obligate Showtime in any way. No monetary judgment was rendered against Showtime, and no decree was issued requiring it to perform any acts whatsoever. The ruling's only direct effect was to permit the trustee for Orion to continue Orion's performance under the Agreement, in order to derive the benefits for which Orion had contracted.

The first prong of the *Granfinanciera* test, a consideration of 18th century English law, was not briefed by either Orion or Showtime, and is thus waived as an issue. *Granfinanciera* itself deems the second prong to be of greater importance, and most of the case law enters directly into a discussion of the nature of the remedy. Justice Brennan, the author of *Granfinanciera,* has himself advocated dropping the first prong altogether. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 559–67, 110 S.Ct. 1339, 1342–46, 108 L.Ed.2d 519 (1990) (Brennan, J. concurring).

The second prong of the test, the more important one, indicates that this ruling is one grounded in equity, for which no jury trial is required. The main indicator of an action at law, i.e. the recovery of damages or real property, is wholly absent from this motion to assume. Rather, the bankruptcy court here was required to determine, in its discretion, whether the trustee should take actions in furtherance of its obligations under the Agreement, or whether it should take no further action and possibly be in breach, converting Showtime into an unsecured general creditor.

■ Generally, a motion to assume is based in equity. *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984) ("Bankruptcy Court is a court of equity, and in making [motion to assume] determination it is in a very real sense balancing the equities"); *Lewis Indus. v. Barham Constr., Inc.,* 878 F.2d 1230, 1231 (9th Cir.1989); *see also Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966) (bankruptcy courts are "essentially courts of equity"). As part of the discretionary decision whether to allow the trustee to assume a contract and perform under it, *see In re Minges,* 602 F.2d 38, 43 (2d Cir.1979), a judge will often need to determine whether the contract has been terminated, *see, e.g., In re Nexus Communications, Inc.,* 55 B.R. 596 (Bankr.E.D.N.C.1985); *In re Nat'l Sugar Ref. Co.,* 21 B.R. 196 (Bankr. S.D.N.Y.1982); if the judge were prevented from making such a determination, the performance of the trustee could subsequently prove futile.

Showtime claims that the proceedings below were "legal" in nature, entitling it to a jury trial. It cites numerous cases to support its contention; however, every one of these cases involved an underlying dispute over a sum of money which constituted an obviously legal claim. *See, e.g., Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (breach of contract action in adversary proceeding); *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (injunction and accounting claim ultimately one for money damages); *Hebert v. Exxon Corp.,* 953 F.2d 936 (5th Cir.1992) (declaratory judgment sought to bind defendant to pay money); *Pied Piper Casuals, Inc. v. Ins. Co. of State of Pa.,* 72 B.R. 156 (S.D.N.Y.1987) (action to compel insurer to pay under policy). Indeed, Showtime seeks to cast this action as one for monetary damages: "Orion sought for Showtime to write a check for the payment of money damages." Brief in Support of Appeal, p. 18. Orion did indeed initially seek a judgment against Showtime for anticipatory breach, and likewise sought a decree in specific performance obligating Showtime to pay a sum of money. But, as discussed above, only the motion to assume is relevant here, and that proceeding did not, in and of itself, obligate Showtime to "write a check."

Only further interaction between the parties, pursuant to the Agreement, can do that.

Showtime argues, correctly, that one cannot convert a breach of contract issue for which a legal remedy and thus a right to jury trial exists into an action in equity merely by using a motion to assume, assuming the contract, and immediately suing for breach. *Cf. Windmill Farms.* However, significant differences exist between that scenario and the present action. There, the bankruptcy judge would need to find that breach had occurred in order to justify assumption, thus effectively deciding a "legal" action. *Cf. Granfinanciera.* Here, the bankruptcy judge only found that a provision had been complied with, justifying the binding of Orion to further performance pursuant to the Agreement. If Orion were to seek to recover damages against Showtime, it would still have to prove breach by Showtime.

The situation would be far different if it were the adversary proceeding for anticipatory breach that had been decided adversely to Showtime. That clearly would have been a legal ruling, binding Showtime to pay a sum of money. *Northern Pipeline.* Likewise, a declaratory judgment that Showtime had anticipatorily breached would be at law. *In re Rosenman & Colin,* 850 F.2d 57, 60–61 (2d Cir.1988). But the important distinction between these hypotheticals and the cases discussed above, on the one hand, and the present case, on the other, is that here Showtime is under no obligation as a result of the ruling.

Because Orion's motion to assume the Agreement is best characterized as seeking equitable relief, Showtime was not entitled to a jury trial.

*Jurisdiction of the Bankruptcy Court*

Showtime alleges that the bankruptcy court lacked jurisdiction over the adversary proceeding, and by virtue of the fact that the identical issue was decided in the motion to assume, over the motion to assume as well. Showtime claims that the adversary proceeding was not a "core"

matter over which the bankruptcy court was granted jurisdiction under 28 U.S.C. § 157(b)(1), (2). This question was decided by Judge Keenan in the context of a motion to withdraw the reference, *see supra;* Judge Keenan correctly determined that the matter was in fact a "core" proceeding properly left to the bankruptcy court.

*Review of Bankruptcy Court's Findings*

This Court has reviewed the findings of fact and law made by the bankruptcy court as to (1) the "key man" provision and (2) whether the contract was executory, and it finds no fault therein, under either a *de novo* or a "clearly erroneous" standard.

Showtime's remaining contentions are without merit and deserve no further discussion.

For the foregoing reasons, the decisions of the bankruptcy court are affirmed.

SO ORDERED.